JAMES HAMLIN & CO. PC,

      Plaintiff,

  v.                                      Case No. 18-cv-1705-pp

CZARNECKI & SCHLENKER, LLC,
MARC CZARNECKI, and TERRY SCHLENKER,

      Defendants.

**ORDER GRANTING DEFENDANTS' CIVIL LOCAL RULE 7(H) EXPEDITED NON-DISPOSITIVE MOTION TO COMPEL DISCOVERY (DKT. NO. 34) AND GRANTING DEFENDANTS' MOTION TO AMEND THE SCHEDULING ORDER (DKT. NO. 40)**

      On October 8, 2020, the defendants filed a motion to compel discovery. Dkt. No. 34. Under Federal Rule of Civil Procedure 37, the defendants ask the court to compel production of the first five pages of plaintiff James Hamlin & Co.'s tax returns from the tax years 2013 and 2014. Id. at 2. The defendants also have filed a declaration of their attorney, Paul Zimmer, in support of the motion. Dkt. No. 35. The plaintiff and the counter-defendant ("the plaintiffs") responded to the motion on October 15, 2020. Dkt. No. 37.

      On December 1, 2020, the defendants filed a motion to amend the scheduling order. Dkt. No. 40. The plaintiffs responded to that motion on December 8, 2020. Dkt. No. 41.

## I. Background

The court issued a scheduling order on September 13, 2019, dkt. no. 27, and subsequently entered orders approving stipulations by the parties to amend the order, dkt. nos. 29, 31, 33. On July 21, 2020, the defendants served plaintiff James Hamlin & Co. ("Hamlin & Co.") with requests for its corporate tax returns for tax years 2012 through 2014. Dkt. No. 34 at ¶1. Two months later, Hamlin & Co. objected to the defendants' request, arguing that it was "not reasonably calculated to lead to discovery of admissible evidence, beyond the scope of the issues in the dispute, and overbroad." Id. at ¶2. The parties met and conferred, which resulted in the defendants limiting the scope of their request to the first five pages of the plaintiff's returns for the years 2013 and 2014. Id. at ¶3.

The complaint states four claims against the defendants: (1) declaratory relief; (2) breach of contract; (3) breach of the duty of good faith and fair dealing and (4) unjust enrichment. Dkt. No. 1 at 5-8. The dispute arises from an asset purchase agreement between the parties dated December 2015. Dkt. No. 1 at ¶8. The agreement called for the plaintiff to purchase the assets of defendant Czarnecki & Schlenker in exchange for "a purchase price in an amount equal to the gross receipts Czarnecki & Schlenker collected in the calendar year 2015 by providing bookkeeping, income tax preparation, and accounting services to its clients (the 'Business'), less any pre-bills or advance payments Czarnecki & Schlenker received from services to be performed after 2015." Id. at ¶10. The plaintiff alleges that according to the asset purchase agreement, the purchase

2

price could be adjusted for various reasons, including increases or decreases of more than 10% in the gross receipts in the first six months of 2017 compared to the first six months of 2015. Id. at ¶12. The plaintiff asserts that the gross receipts during the first six months of 2017 decreased by more than 10% compared to the first six months of 2015, and thus that the plaintiff "was entitled to reduce the installment payment due on June 1, 2018 by $163,026." Id. at ¶¶13-14. The plaintiffs assert that the defendants "wrongfully denied" that the plaintiff was entitled to that reduction. Id. at ¶16.

On December 21, 2018, the defendants filed a counterclaim, dkt. no. 12, and added as counter-defendant Clay Hamlin, dkt. no. 13. The counterclaim alleges a single count of breach of contract. Dkt. No. 12 at 2. The plaintiffs answered the counterclaim on January 7, 2019. Dkt. No. 14. On July 24, 2019, the defendants filed a motion for leave to file a supplemental and amended counterclaim, dkt. no. 19, and filed the supplemental and amended counterclaim on August 21, 2019, dkt. no. 21. The plaintiffs answered on August 27, 2019. Dkt. No. 22.

## II. Motion to Compel

The defendants have asked for tax information for the tax years 2013 and 2014—the two years prior to the year in which the parties executed the asset purchase agreement. The defendants state that they have hired an expert witness[1] to opine about what one accounting firm purchasing another

---

[1] The plaintiffs have filed a motion to exclude the expert's testimony, dkt. no. 45; the time has not yet expired for the defendants to respond to that motion.

accounting firm has to do "to be able to handle the additional work in a good faith and timely manner. Dkt. No. 34 at ¶9. They indicate that part of the expert's theory is that the plaintiff "did not have sufficient revenues, nor was it of sufficient size, to be able to adequately take on the new customers it obtained" through the asset purchase agreement. Id. As the defendants put it, their theory is that the plaintiff "bit off more than it could chew" when it agreed to purchase Czarnecki & Schlenker, knowing at the time of the agreement that they wouldn't be able to service all of Czarnecki & Schlenker's clients. Id. at ¶10. They argue that the pages of the tax returns they seek will provide information about the "size and financial wherewithal" of the plaintiff "to take on the additional clients" the plaintiffs were purchasing. Id. at ¶11.

The plaintiffs respond that the defendants are engaging in a fishing expedition. Dkt. No. 37 at 2. The plaintiffs assert that "the defendants' request for three years[2] of corporate tax returns predating the alleged breach of contract and the parties' contract itself is not likely to lead to the discovery of admissible evidence." Id. They maintain that the information that may be gleaned from these documents will not "shed light" on the breach of contract claims at the heart of the dispute or the related damages. Id. at 2-3. The plaintiffs argue that the documents are "not only irrelevant themselves but not reasonably calculated to lead to the discovery of admissible evidence." Id. at 3-4.

---

[2] The defendant is asking for tax returns pertaining to only two years, not three.

4

The court disagrees that the defendants' request constitutes a "fishing expedition" and that the ten pages of tax documents are not reasonably calculated to lead to the discovery of admissible evidence. The defendants speculate that the plaintiffs' income and profits were so low prior to the purchase that they knew that taking on additional staff would reduce their receipts more than 10% in the first six months of 2017. While this theory does not seem to take into account the likely fact that when the plaintiffs took on the *employees* of Czarnecki & Schlenker, they also took on the *customers* and *revenue* of Czarnecki & Schlenker, the standard for discovery is not whether the requested information will win the day for the party seeking it. The standard is whether the request is likely to lead to admissible evidence. It is conceivable that a company's receipts in the two years preceding its purchase of another company would provide insight into whether the purchasing company had reason to believe that it could not take on the assets, or service the customers, it planned to purchase. Nor is the request unduly burdensome. The defendants ask for ten pages of tax returns that the plaintiffs should have available.

The court will grant the motion to compel.

### III. Motion to Amend Scheduling Order

As noted, the court entered the scheduling order on September 13, 2019. Dkt. No. 27. The parties agreed several times to modify the order. Dkt. Nos. 28, 30, 32. On October 1, 2020, after the last stipulation, the court extended the deadline for completing discovery to December 1, 2020. Dkt. No. 33. On that

5

date, the court received the defendants' motion to amend the October 1, 2020 scheduling order, asking the court to extend the discovery deadline from December 1, 2021 to January 15, 2021. Dkt. No. 40. This was the first time either party has unilaterally asked the court to extend the discovery deadline.

The defendants assert that in their September 23, 2019 first set of requests for production, they asked for information relating to "the dates when work was completed, billed, and collected." Id. at ¶3. They assert that they requested this information again on February 14, 2020 in their second request for production. Id. at ¶4. The defendants say that during Clay Hamlin's deposition on November 13, 2020, they asked about the documents that had not been produced, and that plaintiffs' counsel objected and asked that such questions be directed to her after the deposition. Id. at ¶5. They indicate that when Hamlin responded to these questions about the documents that had not been produced, he said "that it would take ***only 2-3 hours*** to compile reports that would contain the information requested in Defendant's" requests. Id. at ¶6. They say, however, that when they followed up with plaintiffs' counsel after the deposition, counsel responded with an "elusive email not firmly indicating whether the additional documents responsive to Defendants' requests would be produced," and that counsel would not agree to extend the discovery deadline. Id. at ¶9. The defendants insist that the information they seek goes to the heart of the lawsuit, id. at ¶10, and that they need it to complete a spreadsheet they are producing for trial (and show it to the plaintiffs before the close of discovery), id. at ¶13.

6

The plaintiffs agree that defense counsel asked for some documents during the November 13, 2020 Hamlin deposition. Dkt. No. 41 at 1. They agree that they objected to those requests and indicate that they asked defense counsel to put the requests in writing. Id. The plaintiffs assert that "on the day after Thanksgiving"—which would have been November 27, 2020, two weeks after the Hamlin deposition and a day plaintiffs' counsel later informed defense counsel that she had been out of the office (dkt. no. 39-4 at 2)—defense counsel sent an email about the documents requested at the deposition. Id. at 3; 39-4 at 4. Defense counsel followed up the next Monday—November 30— with a voicemail message, emails and a letter. Id. Plaintiffs' counsel responded that she'd not had time to review the transcript of the deposition, but stated that she would have Hamlin produce anything responsive to earlier discovery requests while arguing that any requests made for the first time at the deposition were untimely. Dkt. No. 39-4 at 3. Counsel also asked defense counsel whether he could identify both the requests made at the deposition and when those requests had been made previously, noting that might speed things up. Id. Later the same day, plaintiffs' counsel sent a more fulsome email, this time indicating that she was not sure she'd received the transcript of the deposition and reiterating that she was willing to ask Hamlin to produce anything the defendants had requested pre-deposition but arguing that any requests made for the first time at the deposition were untimely. Dkt. No. 39-4 at 2. Defense counsel responded, "I need you to either agree to produce the items referenced in the letter I sent to you today, or to agree to extend the

7

discovery cutoff. Otherwise, I'll need to file a motion tomorrow. Please let me know." Id. The plaintiffs' counsel replied, in essence, "what I've already said." Id. at 1. Twenty minutes later, defense counsel emailed plaintiffs' counsel the deposition transcript and asked for a "firm answer" about whether Hamlin would produce the documents by the following morning (December 1, 2020) at 10:00 a.m. "or else I will file a motion." Id.

Counsel for the plaintiffs argues that "[r]eviewing the deposition transcript and the defendants' earlier requests for production makes plain that the oral document requests differ from the earlier requests." Dkt. No. 41 at 2. Counsel then refers the court to an eighteen-page excerpt of the deposition transcript—attached as an exhibit to the declaration of defense counsel Paul Zimmer, Dkt. No. 39-3—and the ten pages of written discovery demands—also attached as an exhibit to Zimmer's declaration, dkt. no. 39-1. Id. Apparently counsel expects the court to go through and find each deposition request, then try to find where in the written discovery demands that request was (or was not) made. The court declines that invitation—it is the plaintiffs' responsibility to identify the discrepancies, not the court's.

This is the kind of discovery dispute that courts find frustrating. Mr. Hamlin answered some questions at the deposition which prompted defense counsel to ask about documents. Mr. Hamlin should not have been expected to produce those documents in the middle of a deposition without having the opportunity to consult with counsel, so counsel for the plaintiffs asked defense counsel to put the requests in writing. Defense counsel appears to have done

8

nothing for two weeks, until the Friday after Thanksgiving (which many folks take off work) and three days before the discovery deadline. Then, instead of providing a detailed list of the documents requested, defense counsel sent an email requesting the documents generally. Plaintiffs' counsel responded that she'd look at the transcript and get back to defense counsel. The next business day—Monday, November 30, the day before the discovery deadline—defense counsel inundated counsel for the plaintiffs with a voicemail, emails and a letter (which did, finally, the day before the discovery deadline, outline the various places in the deposition transcript where documents had been requested and correlated them to prior written discovery demands, Dkt. No. 39-5), then provided her with the deposition transcript at 4:30 in the afternoon and demanded production of the documents (or an agreement to extend the discovery deadline) by the next morning at 10:00 a.m.

If defense counsel had started out by sending the letter he eventually sent on November 20 (Dkt. No. 39-5), and if he'd sent it sooner, perhaps plaintiffs' counsel might have agreed to an extension of the discovery deadline. Waiting until the last minute, then threatening opposing counsel with filing a motion with the court, is a strategy unlikely to encourage cooperation.

On the flip side, the plaintiffs seem to assume that the defendants are asking the court to compel production of the documents. The plaintiffs argue that the defendants "seek to have the plaintiff create documents that do not exist." Dkt. No. 41 at 3. They also argue that "the defendants' repeated requests for the plaintiff to manipulate data into a variety of different

9

documents is disproportional to the parties' dispute—particularly as the plaintiff has already created spreadsheets containing most of the data sought by the defendants ***and*** made its computer system available for inspection such that the defendants could have obtained the data they now seek." Id. The defendants have asked only for the court to extend the discovery deadline. If the plaintiffs do not have the discovery the defendants have requested, they may tell the defendants that. As for the plaintiffs' argument that the defendants are asking them to produce the same data in different formats, that isn't a proportionality issue. If the plaintiffs already have produced the data the defendants are requesting, they can tell the defendants that, too. If the defendants disagree, they may file another motion to compel, although the court would hope the parties could resolve these issues without getting to that point.

The court will amend the scheduling order to give the parties additional time to resolve this dispute—hopefully without the court's intervention. The court will address the plaintiffs' motion to exclude the defendants' expert after it is fully briefed.

### IV. Conclusion

The court **GRANTS** the defendants' motion to compel discovery and **ORDERS** the plaintiffs to turn over the ten pages of tax return information the defendants have requested. Dkt. No. 34.

The court **GRANTS** the defendants' motion to amend the scheduling order. Dkt. No. 40.

10

The court **ORDERS** that the scheduling order entered on October 1. 202 (Dkt. No. 32) is **AMENDED** as follows: the time for the parties to complete discovery (other than depositions of defendants' experts) is **EXTENDED** until the end of the day on **April 2, 2021**. The plaintiffs must complete the depositions of the defendants' experts within forty-five days of the date the court rules on the plaintiffs' motion to exclude. The deadline for the parties to file dispositive motions (or to notify the court in writing that they do not intend to do so) is **EXTENDED** until the end of the day on **May 7, 2021**; the response and reply deadlines mandated by Civil L.R. 56 apply.

The court **ORDERS** that the motion hearing currently set for March 9, 2021 is **REMOVED** from the court's calendar.

Dated in Milwaukee, Wisconsin this 8th day of March, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
